**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

AMY C. CUSTER
3122 Hopewell Place
Toledo, OH  43606           :
                         :
        Plaintiff,       :
                         :
        v.                :          Case No.
                         :
NATIONAL BOARD OF MEDICAL   :
EXAMINERS              :
3750 Market St.             :
Philadelphia, PA 19104       :
                         :
        Defendant.      :

## COMPLAINT

Plaintiff Amy C. Custer ("Ms. Custer"), by and through her undersigned counsel,

commences this complaint against the National Board of Medical Examiners ("NBME" or

"Defendant"), for violating the federal and state non-discrimination statutes, namely the

Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973 and the Ohio

Civil Rights Commission Act respectively, require equal access and appropriate

accommodations.

## INTRODUCTION

1.      This action challenges the discriminatory denial of appropriate testing

accommodations as requested by plaintiff, Ms. Custer, on the United States Medical Licensing

Examination Step 1 (USMLE Step 1 or Step 1) which is administered by Defendant.   The

discrimination challenged herein has deprived plaintiff, Ms. Custer a person with disabilities,

from taking the USMLE Step 1 on a level playing field with her non-disabled peers.  These civil

rights violations are ongoing and include discrimination and failure to provide appropriate accommodations in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, et. seq. as amended ("ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. 794 (Section 504)  and the Ohio Civil Rights Commission Act, Ohio Rev. Code Ann §4112 et. seq. (OCRCA) Immediate and permanent injunctive relief is necessary to ensure that Plaintiff is no longer excluded from, deterred from or otherwise discriminated against in taking the USMLE Step 1.

2.      Defendant, NBME has failed to provide Plaintiff appropriate testing accommodations, which includes extended time (100% or double) on USMLE Step 1 examination. Plaintiff furnished Defendant with extensive documentation of her disabilities and entitlement to accommodations as set forth in Defendant's policies for documentation to support requests for test accommodations. Plaintiff brings this action to enforce her statutory rights to appropriate accommodations and equal educational opportunities under the ADA, Section 504 and OCRCA.

3.      Defendant administers the USMLE Step 1, which is a standardized examination and requirement for medical licensure. USMLE Step 1 is required for allopathic medical school graduation and residency eligibility in the United States.  Defendant has the legal, educational and professional responsibility to offer appropriate testing accommodations to individuals with disabilities on the USMLE Step 1. Such accommodations, which are neither expensive nor difficult to provide, allow individuals with learning disabilities and other cognitive impairments, like Plaintiff, to demonstrate their aptitude and skill level.

## JURISDICTION AND VENUE

4.      This action arises under the laws of the United States, specifically the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 *et. seq* and Section 504, 29 U.S.C. 794. Therefore, this Court has subject matter jurisdiction based on a federal question pursuant to 28 U.S.C. §1331 and 1343. This Court further has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

5.      This Court has jurisdiction to issue a Declaratory Judgment pursuant to 28 U.S.C. §2201(a) and further relief pursuant to 28 U.S.C. §2202.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the Defendant is doing business in this judicial district by virtue of administering the USMLE Step 1 in this district and has sufficient contacts for personal jurisdiction.  Alternatively and cumulatively, venue is proper in this Court pursuant to 28 U.S.C. §1391 in that acts of discrimination have taken place in this District and Ms. Custer resides in this District.

## PARTIES

7.      Ms. Custer will be entering her third year of medical school at the University of Toledo College of Medicine (UTCOM). She is a resident of and attends medical school in Ohio and ultimately hopes to be a physician in Ohio. Along with the other students in Ms. Custer's class, she intended to take the USMLE Step 1 shortly after the completion of her second year of medical school; however, due to Defendant's discriminatory denial, she was not able to take her examination along with her fellow classmates.

8.      The NBME is a District of Columbia not-for-profit organization headquartered in Philadelphia, Pennsylvania.  NBME administers the USMLE, a three step examination, the successful completion of which is required for medical licensure in the United States.

Additionally, one's level of performance on the USMLE is a prominent factor used in the highly competitive candidate selection process by residency training programs.  Defendant is a private entity that offers examinations related to applications and credentialing to postsecondary education, professional and trade purposes and as such is subject to the non–discrimination and appropriate accommodation requirements of the ADA. The NBME administers the USMLE throughout the country, including in Ohio and, specifically, the Northern District of Ohio.

9.      NBME engages in business in Ohio and this judicial district and this action arises from those business activities.

## FACTUAL ALLEGATIONS

10.      Ms. Custer is a student entering her third year[1] (of a four year program) of medical school and is expected to graduate in May 2020. In order for Ms. Custer to obtain her medical licensure, she is required to pass separate steps of the USMLE, commonly referred to as USMLE Step 1, USMLE Step 2-Clinical Knowledge, USMLE Step 2-Clinical Skills and USMLE Step 3. Ms. Custer is preparing to take the USMLE Step 1, which she intends to take in Ohio.

11.      Ms. Custer is impaired by a Specific Learning Disorder with impairments in reading and written expression. This condition substantially limits the major life activities of thinking, learning, reading, writing, spelling and test taking, which are activities necessary to take the USMLE under standard conditions. The Defendant has, contrary to the ADA, Section 504 and OCRCA refused and continues to refuse to provide appropriate accommodations for Ms. Custer's disabilities by refusing to provide her with additional time (100% double extended time) to take the USMLE Step 1.

---

[1]  Ms. Custer's entry into her third year of medical school in June 2018 is contingent upon her taking the USMLE Step 1 by June 8, 2018.

12.     If Ms. Custer does not receive appropriate accommodations on the Step 1, her exam results will not reflect her aptitude and achievement level as required by law.  Moreover, she may score poorly or fail the examination due to failure to appropriately complete the exam if given insufficient time to access and answer each question, which would adversely impact her ability to graduate medical school, obtain medical licensure, and/or qualify for a residency program.

13.     Ms. Custer's situation is further exacerbated by the fact that UTCOM requires a student to take Step 1 of the USMLE no later than one week before the start of third year clerkships, which in this case is June 8, 2018.

**<u>Ms. Custer's History of Disability and Accommodations</u>**

14.     Throughout Ms. Custer's entire education, she has been impaired by a specific learning disability and has a record of receiving accommodations in school and on standardized examinations.

15.     During elementary school Ms. Custer experienced problems with reading and found that it took her a very long time to read and understand written material. As she progressed into middle school and she was unable to complete timed tests, her impairments became evident, particularly to her school teachers.

16.     Ms. Custer's reading impairment was first evaluated and recognized in middle school (2007) when she was nearly fourteen years old. Her school district's school psychologist conducted a psychoeducational evaluation. The school psychologist found that on normed reading assessments her word reading was difficult and that her reading fluency was significantly depressed falling in the 1st quartile (i.e. below average) and often took her two to three times longer than the normal rate of fluency.

17.     Ms. Custer's school's psychologist reported that the evaluation supported that Ms. Custer is a person with a disability and therefore eligible under Section 504 to receive accommodations. The school's psychologist reported that the most essential accommodation would be that of having extended time in completing tests and quizzes and possibly completing assignments. The school's psychologist further recommended taped textbooks to assist in the development of reading fluency skills.

18.     Following the school district's evaluation, Ms. Custer's school district issued and implemented a Section 504 Service Plan (504 Plan) at the start of ninth grade, which provided accommodations including unlimited time on all tests, and extended time on reading assignments and to complete classroom assignments.

19.     The following school year, Ms. Custer's school district conducted another evaluation. The results of the evaluation showed that Ms. Custer showed impairment with reading decoding and reading fluency. Her school continued to recommend providing accommodations that included extra time on assignments and tests that require reading.

20.     Ms. Custer was covered under a 504 Plan for the duration of high school, which provided among other things, extended time for tests and completing assignments involving reading.

21.     The NBME has received documentation that Ms. Custer's school district issued a 504 Plan, which provided the accommodation of extended time for tests and assignments.

22.     Ms. Custer applied for and was approved for accommodations for both the ACT exam and the College Board examinations.

23.     The College Board accommodation of 100% extended time was implemented for the three AP exams that Ms. Custer took in high school.

6

24.     The NBME has received documentation that the College Board approved for Ms. Custer to receive 100% extended time on the AP exams.

25.     The ACT originally approved for Ms. Custer to receive 50% extended time; however, when 50% extended time proved to be insufficient for Ms. Custer to access the ACT exam, Ms. Custer's school submitted additional documentation along with a request for 100% extended time. After receiving additional documentation, the ACT approved for Ms. Custer to receive 100% extended time.

26.     The NBME received documentation that Ms. Custer was approved for and received 100% extended time for the June 2010 ACT examination.

27.     Prior to graduating high school in the Spring 2011, Ms. Custer's school district conducted another evaluation. The school's psychologist reported that Ms. Custer's reading fluency was slow and that she took longer to read than most students.  The school's psychologist recommended that Ms. Custer continue to receive extended time on assignments and tests.

28.     Ms. Custer also received a private evaluation in May 2011 in order to update her documentation for college. Ms. Custer's evaluator reported that his observation coupled with the results on several normed measures reflects that Ms. Custer has significant impairments in her reading decoding, reading fluency, writing, and academic fluency. Ms. Custer's evaluator concluded that Ms. Custer has Reading Disorder (dyslexia), Disorder of Written Expression and Attention Deficit Hyperactivity Disorder (ADHD).

29.     Ms. Custer's 2011 evaluation reported that her reading impairment is significant and can be expected to significantly interfere with her future educational efforts without the accommodation of extended time for assignments, classroom tests and standardized tests. Ms. Custer's evaluator further reported that any standardized test administered without the

accommodation of 100% extended time would not be an accurate and valid measure of Ms. Custer's knowledge.

30.     In the Fall 2011, Ms. Custer commenced her undergraduate education at the University of Toledo (UT). Upon entering UT, Ms. Custer applied for and UT approved a 504 Plan that provided several accommodations including 100% extended time, use of a calculator during exams, a reader to assist with exams, use of a spell checker, a distraction reduced environment for taking exams, a note-taker, and the ability to record lectures. These accommodations were approved and implemented throughout the course of Ms. Custer's matriculation at UT.

31.     The NBME has received documentation of the accommodations UT approved for Ms. Custer including 100% extended time for exams.

32.     Ms. Custer was accepted to UTCOM through an early decision program. Consequently, UTCOM waived the requirement of taking the Medical College Admission Test (MCAT) and Ms. Custer never applied for accommodations or took the MCAT.

33.     Ms. Custer entered UTCOM in August 2015. UTCOM approved for Ms. Custer to receive a 504 Plan that provided the same accommodations that she received in her undergraduate education including 100% extended time.

34.     The NBME has received documentation of the accommodations that UTCOM approved for Ms. Custer including 100% extended time.

**Ms. Custer's Current Documentation of Impairment**

35.     Ms. Custer was reevaluated in March 2017. The same neuropsychologist who evaluated her in May 2011, conducted the March 2017 evaluation.

36.     Her evaluator reported his findings on normed assessments and his observations, which indicated that Ms. Custer's reading fluency, reading accuracy, decoding and spelling were impaired.  He reported that in oral reading assessments her reading was slow and deliberate and that she made numerous errors and omissions.

37.     Ms. Custer's evaluator concluded that she has a Specific Learning Disorder with impairment in reading (developmental dyslexia) and written expression.  Her evaluator recommended several accommodations including 100% extended time on standardized exams.

38.     During her matriculation at UTCOM, Ms. Custer has taken numerous objective examinations and has utilized 100% extended time in accordance with her 504 Plan.

39.     Despite her long history of disabilities and struggles, Ms. Custer has been able to achieve considerable academic success due in large part to accommodations, extensive tutoring, and an extraordinary high level of effort, perseverance and support.

### The USMLE Step 1

40.     According to the NBME, "the USMLE Step 1 examination is intended to assess whether [a medical student] understand[s] and can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy."[2]

41.     The Step 1 examination consists of questions presented in standard multiple choice formats.  Step 1 has approximately 280 multiple choice test items, divided into seven 60-minute blocks with no more than 40 questions in each block, administered in one eight hour testing session.

---

[2]     http://usmle.org/pdfs/bulletin/2018bulletin.pdf  (last visited December 4, 2017).

42.     The NBME develops and administers the USMLE Step 1 at various test sites and on various dates throughout the United States. The results of each student's scores are reported to that student's medical school.

43.     Ms. Custer must pass the USMLE Step 1 in order to maintain her eligibility to remain in medical school.  Furthermore, passing the USMLE Step 1 is required to graduate UTCOM, to enter into a residency program, to be eligible to take the USMLE Step 2 and 3 examinations and to ultimately obtain medical licensure.  Furthermore, a failed attempt or poor performance on the Step 1 can adversely impact Ms. Custer's competitiveness and acceptance into a residency training program and may further limit the range of medical fields that Ms. Custer may enter.

**NBME's Denial of Ms. Custer's Request For Accommodations**

44.     On or about the first week of January 2017, Ms. Custer submitted her request for accommodations on the USMLE Step 1. Ms. Custer requested the accommodations of 100% extended time. Included with Ms. Custer's request for accommodations were the following documents supporting her request for accommodations:

   a.     USMLE Request for Accommodations completed and signed by Ms. Custer on December 28, 2016.

   b.     Ms. Custer's Personal Statement concerning her disability and impairment.

   c.     USMLE Certificate of Prior Test Accommodations signed on December 28, 2016 by Robyn Gandy, Ph.D., Accessibility Specialist, University of Toledo, certifying that Ms. Custer receives 2.0x (100%) extended time on examinations.

   d.     Bill Milnes, Principal, Coldwater High School – January 4, 2017 letter – confirming approval of a 504 Plan providing extended time tests and assignments.

   e.     Coldwater Community Schools – Official Transcript.

10

f.      ACT Score Report March 2010.

g.      ACT Score Report June 2010.

h.      ACT June 1, 2010 letter approving 100% extended time.

i.      University of Toledo – Official Transcript.

j.      Robert D. Smith, Ph.D. – Neuropsychological Evaluation – May 2011.

k.      United Behavioral Health Plan Insurance form regarding diagnosis and treatment.

l.      University of Toledo – Learning Disability Documentation Form.

m.      Coldwater High School – Jeff Culp, School Psychologist - Psycho-Educational Assessment – May 2011.

n.      Coldwater High School – Section 504 Plans – September 17, 2007 and September 25, 2009.

o.      Bill Milnes, Principal, Coldwater High School – January 8, 2010, letter to ACT regarding accommodations.

p.      Amanda Leshk, Psy.D., Specialist in Psychological Services, Branch ISD Special Education Service, May 6, 2010 letter regarding testing and accommodations.

q.      Martha Biddlecome, English Teacher, Coldwater High School, May 25, 2010 letter regarding accommodations.

r.      Jessica Krzyzanski, Spanish Teacher, Coldwater High School, May 27, 2010 letter regarding accommodations.

s.      Samantha Wendorf, Mathematics Teacher, Coldwater High School, May 27, 2010 letter regarding accommodations.

t.      ACT letters and e-mail regarding approval for double (100%) extended time.

u.      College Board – April 1, 2010 letter approving 100% extended time.

v.      Branch Intermediate School District – Michael Bodkins, School Psychologist – Psycho-Educational Assessment – August 28, 2007.

   w. Branch Intermediate School District – Amanda Leshk, School Psychologist – Psycho – Educational Assessment – October 27, 2008.

45. The foregoing documentation provided to the NBME substantially complied with the documentation required by the NBME for requesting accommodations on the USMLE.

46. The foregoing documentation demonstrated that qualified professionals who evaluated Ms. Custer recommended accommodations, including extended time on tests and standardized examinations and that she previously received 100% extended time on exams in high school, college and medical school and on multiple standardized examinations.

47. By letter March 15, 2017, Defendant NBME informed Ms. Custer that her request for accommodations for the USMLE Step 1 was denied and that no accommodations were approved.

48. NBME's denial letter asserts that the documentation did not demonstrate a substantial limitation in a major life activity as compared to most people or that the requested accommodations are not an appropriate modification of Ms. Custer's USMLE Step 1 administration.

49. Charles Weiner, Esquire, Counsel for Ms. Custer, submitted a letter dated July 11, 2017.  Counsel's letter requested a review and reconsideration of NBME's decision.  Counsel's letter summarized Ms. Custer's history of prior evaluations and use of accommodations; summarized the legal standards under the ADA; and requested that Defendant provide the accommodations, specifically 100% extended time as recommended by Ms. Custer's evaluators and provided throughout high school, college, medical school and on numerous standardized examinations.

50.     Submitted with counsel's letter of July 11, 2017 was the documentation identified above in paragraph 44 above along with further documentation supporting Ms. Custer's request for accommodations.  The documentation submitted included the following:

      a.  Robert D. Smith, Ph.D. – Neuropsychological Evaluation –May 4, 2017.

      b.  Amy Custer – Request for Reconsideration and Personal Statement – May 9, 2017.

51.     The documentation furnished to the NBME provided current and historical evaluations, which established that Ms. Custer has a long and well documented history of learning disabilities that impact her reading, learning, reading fluency, and thinking at the same rate, condition and manner as most people. Moreover, the foregoing documentation provided proof that Ms. Custer previously received and currently receives 100% extended time accommodations in school and on several standardized examinations.

52.     By letter dated July 28, 2017, the NBME rejected Ms. Custer's request for 100% extended time, but rather, provided 50% extended time.

53.     NBME letter provided no explanation for its denial of the requested 100% extended time other than a boilerplate statement that "[y]our documentation does not demonstrate that 100% additional testing time is an appropriate modification of your Step 1 test administration."

54.     In spite of never having met Ms. Custer, never having tested her or never having evaluated her, NBME ignored highly qualified professionals who observed and evaluated Ms. Custer and her history of receiving 100% extended time in school and on other standardized examinations is in clear violation of 28 C.F.R. §36.

13

55.    The requested accommodations of 100% extended time is necessary to appropriately accommodate the condition and manner of Ms. Custer's limitations. Without this accommodation Ms. Custer will be unable to demonstrate her actual knowledge, skills and abilities on the USMLE Step 1.

56.    Ms. Custer has an indisputable disability that substantially limits her major life activities of thinking, learning, reading, concentrating, studying, writing, processing information and taking standardized examinations in the same condition and manner as most people. Under the ADA, Ms. Custer is entitled to the accommodation of 100% extended time. The NBME's refusal to provide the requested appropriate accommodations is a violation of Ms. Custer's rights under the ADA, Section 504 and the OCRCA.

57.    As a direct and proximate result of NBME's violation of the ADA, Section 504 and OCRCA, Ms. Custer will be unable to complete her medical school education in the same manner as her classmates if she does not successfully complete the USMLE Step 1. Moreover, she will be placed at a distinct disadvantage of competing for quality residency positions if she must take the examination without appropriate accommodations for her disability. She will be irreparably harmed because she will lose the extensive time she has invested in medical school and preparation for the examination; and she will be prevented from competing on a level playing field with other students in medical school.  In the worst case scenario, Ms. Custer's medical career and dream could end if she is unable to pass the USMLE Step 1, because the NBME will not accommodate her disability as required by the ADA, Section 504, and the OCRCA.

58.    Ms. Custer requires the requested accommodations on the USMLE Step 1 examination not to gain an advantage, but to attempt to level the playing field because her

14

functional limitations impact her ability to take this examination in a way that non-disabled test takers do not experience.

59.    Ms. Custer through counsel has notified NBME of its violation of the ADA and requested that it remedy this matter by providing the requested accommodations.

## COUNT I – VIOLATION OF THE ADA

60.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

61.    Plaintiff is an individual with a disability within the meaning of the ADA, 42 U.S.C. §12101 et. seq. Accordingly, Plaintiff is a qualified individual within the meaning of the ADA in that she meets all the eligibility criteria for taking the USMLE Step 1.

62.    Plaintiff requires appropriate accommodations to participate in a fair, full, and equal basis on the USMLE Step 1. The modifications that Plaintiff needs, namely 100% extended time, would not impose a fundamental alteration, but would attempt to level the field and allow her aptitude and abilities to be fairly and accurately measured.

63.    Defendant administers the USMLE examinations, which are examinations related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

64.    The ADA, 42 U.S.C. § 12189, requires Defendant to offer these examinations in a manner accessible to persons with disabilities.

65.    Title III of the ADA, which is enforced by the U.S. Department of Justice, states in pertinent part, "It is discriminatory to fail to make reasonable modifications to policies, practices, and procedures when necessary to provide goods and services to a person with a disability." 42 U.S.C. §12182(b)(2)(A)(ii).

15

66.    The Department of Justice regulations mandate that a private entity offering examinations modify its examinations as necessary to ensure full and equal access to persons with disabilities, including through the provision of extra time to permit completion.  28 C.F.R. §§ 36.309(b) & (c).

67.    The Department of Justice Regulations prohibit Defendant from administering the USMLE examinations without ensuring that the scores reported "accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b)(1)(i).

68.    The Department of Justice (DOJ) Regulations require that when considering requests for modifications, accommodations, or auxiliary aids or services, the entity gives considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations, as well as such modifications, accommodations, or related aids and services provided in response to an Individualized Education Program (IEP) provided under the Individuals with Disabilities Education Act or a plan describing services provided pursuant to section 504 of the Rehabilitation Act of 1973, as amended (often referred as a Section 504 Plan).  28 C.F.R. §36.309(b)(1)(v).

69.    The DOJ's ADA Guidance further provides, "[r]eports from experts who have personal familiarity with the candidates should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 796.

70.    The DOJ's regulations require: "any request for documentation …is reasonable and limited to the need for the modification, accommodations, or auxiliary aid or service requested."

16

71.    Defendant has discriminated, and continues to discriminate against Plaintiff on the basis of her disability by denying her an equal opportunity to demonstrate her aptitude and achievement level on the USMLE Examinations in violation of the ADA, specifically 42 U.S.C. §12182, §12189 and 28 C.F.R. §36.309.

72.    Defendant's discriminatory policies and practices violate Plaintiff 's rights under the ADA and the regulations promulgated thereunder. Defendant's discriminatory policies and practices include but are not limited to:

a.    Failure to grant accommodations when Plaintiff submitted the requisite documentation and provided documentation of a history of comparable accommodations on standardized examinations and other academic examinations.

b.    Failure to give considerable weight to Plaintiff's evaluators.

c.    Failure to provide a clear explanation for denial.

d.    Failure to offer examination in a place and manner that is accessible to individuals with disabilities and best ensures that the examination accurately reflects Plaintiff's aptitude, achievement level, or whatever other factor the examination purports to measure.

e.    Failure to engage in good faith in the interactive process to consider and implement effective accommodations to Plaintiff's disability.

f.    Failure to give considerable weight to Plaintiff's prior approval and use of accommodations in school and on standardized examinations.

g.    Failure to consider Plaintiff's request for accommodations without regard to the ameliorative effects of mitigating measures.

h.    Failure to conduct a proper review and apply appropriate legal standards to Plaintiff's request for appropriate accommodations.

i.    Placing an extreme burden of proof, beyond what is required by the ADA, to establish Plaintiff's disability or need for accommodations.

j.    Making unreasonable requests for documentation or requiring documentation that is not relevant to Plaintiff's need for the requested accommodation.

73.     Plaintiff will be irreparably harmed if the NBME continues its unlawful refusal to provide her the appropriate test accommodations as requested and unless this Court grants injunctive relief prohibiting the continued violation of Plaintiff's ADA rights and compelling the NBME to provide the requested accommodation, in that:

   a.   Plaintiff's medical school career will be placed on hold because a passing score on the USMLE Step 1 is a prerequisite to continuing her medical school education.

   b.   Given her history with prior examinations, Plaintiff is justifiably concerned that she may not pass the USMLE Step 1 without the additional extra time accommodation to which she is entitled under the ADA.

   c.   Plaintiff's opportunity to engage in her career of choice is effectively on hold until the NBME is compelled to comply with the ADA.

   d.   Plaintiff will be unable to continue the same pace of her medical school career as her peers if she is unable to pass the USMLE Step 1 at this time;

   e.   Requiring Plaintiff to take the USMLE Step 1 without the extended time accommodation puts her at a distinct disadvantage given her disability;

   f.   Reduced performance on the USMLE Step 1 as a result of not receiving her requested accommodation significantly reduces Plaintiff's future residency and professional career options.

74.     NBME will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

75.     The public interest will be served by granting the requested injunctive relief. The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with opportunities equal to those persons in the community without disabilities. The public interest will not be served by allowing the NBME to continue its unlawful refusal to provide Plaintiff with the ADA accommodations to which she is justly entitled.

76.     As a result of the NBME's violation of the ADA, Plaintiff has suffered or will

suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

77.    NBME's conduct constitutes an ongoing and continuous violation of the ADA. Unless enjoined from doing so, Defendant will continue to violate said law.  Said conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law. Consequently, Plaintiff is entitled to injunctive relief under the ADA, 42 U.S.C. § 12188.

## COUNT II – VIOLATION OF SECTION 504

78.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

79.    Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

80.    Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . ." 29 U.S.C. § 794(b)(1).

81.    Such federally funded programs and activities must provide aids and services that "afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

82.    NBME receives federal grants, contracts, and other financial assistance, thereby

19

subjecting itself to the requirements of Section 504.

83.    Plaintiff is a qualified individual with a disability under Section 504.

84.    NBME has, solely by reason of Plaintiff's disability, excluded Plaintiff from participation in, denied her the benefits of, and otherwise discriminated against her in its service, programs or activities.

85.    NBME actions set forth more fully above and incorporated herein, constitute intentional discrimination on the basis of disability in violation of Section 504.

86.    The actions by NBME were done intentionally or with deliberate indifference to the protected rights of Plaintiff.

## COUNT III – DECLARATORY RELIEF

87.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

88.    A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties.  Plaintiff contends that Defendant violated and continues to violate her rights under the Americans with Disabilities Act as amended, 42 U.S.C. sections 12101, *et seq*.  Based upon information and belief, Defendant denies these allegations, thus declaratory relief is therefore necessary and appropriate.

89.    Plaintiff seeks a judicial declaration of the rights and duties of the respective parties accordingly relief is therefore necessary and appropriate.

## COUNT IV – VIOLATION OF OHIO CIVIL RIGHTS COMMISSION ACT

90.    Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

91.     This court has supplemental jurisdiction pursuant to 28 U.S.C. §1367, in that all claims are related and arise from a common nucleus of operative facts and Plaintiff expects to try all related claims in one judicial proceeding.

92.     Plaintiff is an individual with disabilities within the meaning of Ohio Civil Rights Commission Act, Ohio Rev. Code Ann §4112 et. seq. (OCRCA), which prohibit unlawful discrimination against any person because such person is or has been disabled.

93.     OCRCA prohibits a place of public accommodation refusing, withholding from, or denying a person its accommodations, advantages, facilities or privileges thereof because the person has a disability.

94.     OCRCA further prohibits educational institutions from failing to provide accommodations such as extended time.

95.     The acts and/or omissions of Defendant were intentional and/or done with deliberate indifference to the protected rights of Plaintiff.

96.     As a result of the Defendant's violation of the ADA, Section 504 and OCRCA, Plaintiff has suffered or will suffer great injury, as set forth in the preceding paragraphs of this Complaint, which are incorporated by reference, and in addition thereto has and will suffer out-of-pocket pecuniary losses, and emotional distress and anguish.

**RELIEF REQUESTED**

1.      An order compelling the Defendant, or those acting as agents for or in concert with it, to immediately cease and desist from its refusal to accommodate Plaintiff's request for appropriate accommodations on the USMLE examinations and ordering that the Defendant immediately comply with the ADA, Section 504 and OCRCA by allowing Plaintiff the requested appropriate accommodation on the USMLE Step 1, which shall include100% extended time on

all sections of the examination, Said accommodation shall also be made applicable to all Steps of the USMLE examinations.

      2.      Make the above order permanent and that such order be made applicable to all future examinations administered by Defendant and taken by Plaintiff.

      3.      An order granting such other injunctive relief as may be appropriate.

      4.      An order granting declaratory relief.

      5.      An order awarding compensatory damages.

      6.      An award for attorney fees, costs, and expenses of suit incurred herein.

      7.      Award for such other and further relief as the Court may deem just and proper.


Respectfully submitted

*/s/Florence J Murray*_____
Florence J. Murray, Esquire (0080292)
Murray & Murray
111 East Shoreline Drive
Sandusky, OH 44870
Tel: (419) 624-3011
Fax: (419) 624-0707
fjm@murrayandmurray